UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **MARIA HERNANDEZ**<br>9304 Messina Drive,<br>Fort Washington, MD 20744<br><br>   **Plaintiff,**<br><br>    v.<br><br>**MEDSTAR SOUTHERN MARYLAND HOSPITAL CENTER, INC.**<br>7503 Surratts Road<br>Clinton, MD 20735,<br><br>Serve: The Corporation Trust, Incorporated<br>2405 York Road<br>Suite 201<br>Lutherville Timonium, MD 21093-2264<br><br>   **Defendant.** | Case No.: _____ |

## CIVIL COMPLAINT FOR MONETARY AND EQUITABLE RELIEF

Plaintiff Maria Hernandez ("Plaintiff" or "Ms. Hernandez"), by and through her undersigned counsel, brings this action under the Family and Medical Leave Act ("FMLA" or "Act"), 29 U.S.C. § 2601 *et seq*. alleging claims of retaliation and interference with her rights under the Act against MedStar Southern Maryland Hospital Center ("Defendant" or "MedStar").

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331.

2. Venue is proper in this District because Defendant conducts business in the division in which the Court sits, and because the events, acts, and omissions giving rise to the Complaint occurred in this Division.

## THE PARTIES

3. Plaintiff, Maria Hernandez, is a resident of Maryland, residing at 9304 Messina Drive, Fort Washington, Prince George's County, Maryland 20744.

4. Defendant, MedStar Southern Maryland Hospital Center, is a Maryland corporation with its Principal Office at 7503 Surratts Road, Clinton, Prince George's County, Maryland 20735.

## FACTUAL ALLEGATIONS

### *Background*

5. Ms. Hernandez was employed by MedStar for approximately seventeen years as a housekeeper.

6. Ms. Hernandez's native language is Spanish, and she has limited English speaking skills. She cannot read or write in English.

7. However, Ms. Hernandez's supervisor, Kenny Crawford, only spoke with her in English.

8. Ms. Hernandez's prior supervisors only spoke English.

9. Ms. Hernandez was the only Spanish speaking employee on her shift and in her building.

### *Plaintiff requires leave due to her mother's unexpected illness.*

10. On or around February 19, 2020, Ms. Hernandez unexpectedly learned that her mother in El Salvador was terminally ill and she needed to fly to El Salvador immediately to care for her mother.

11. That same day, Ms. Hernandez informed Mr. Crawford that her mother was terminally ill and that she had to fly to El Salvador the next day to take care of her.

12. MedStar Director, Earl Fisher, asked Ms. Hernandez if her mother was still alive, and Ms. Hernandez answered "yes." Mr. Fisher directed Mr. Crawford to provide Ms. Hernandez a note of absence with no return date listed.

2

13. Neither Mr. Fisher nor Mr. Crawford told Ms. Hernandez that she would violate Defendant's attendance policy if she went three consecutive shifts without notifying her supervisor that she would be absent.

14. Ms. Hernandez was unfamiliar with the attendance policy, as she had never called out of work before.

15. Furthermore, Ms. Hernandez did not understand the attendance policy due to the language barrier. Although she attended a training on the attendance policy, the policy was in English. Ms. Hernandez was never given this information in Spanish and no one confirmed that she understood.

16. Neither Mr. Fisher nor Mr. Crawford told Ms. Hernandez that she was entitled to leave under the Family and Medical Leave Act.

17. Due to the language barrier, Ms. Hernandez was not adequately informed about MATRIX, the third-party system MedStar uses to process FMLA claims; thus, she could not invoke her FMLA rights.

18. Defendant never gave Ms. Hernandez adequate information to understand her obligations under the attendance policy or her rights under the FMLA.

19. Defendant did not tell Ms. Hernandez about the attendance policy or about her rights under the FMLA before she left for El Salvador.

*Plaintiff leaves for El Salvador.*

20. Ms. Hernandez left for El Salvador on February 20, 2020.

21. Ms. Hernandez did not have internet service in El Salvador and could not communicate with her supervisors.

22. Even if Ms. Hernandez were able to purchase internet service, she did not have an email address for her supervisors.

23. During her time in El Salvador, Ms. Hernandez's mother died, and Ms. Hernandez had to attend to funeral arrangements.

*Defendant terminates Plaintiff's employment.*

24. On or around March 5, 2020, Ms. Hernandez received a phone call from Mr. Fisher, asking when she was returning to work. Ms. Hernandez explained to him that her mother had just died, but that she would return by Monday March 9, 2020. Mr. Fisher responded that he was going to investigate, without explaining what he was going to investigate, and call her back.

25. Less than an hour after this phone call, Ms. Hernandez received a phone call from Human Resources. Human Resources asked Ms. Hernandez when she intended to return to work. Again, Ms. Hernandez explained that her mother had just died and provided Human Resources the same return date as she had Mr. Fisher. Human Resources, like Mr. Fisher, responded that were going to investigate and call Ms. Hernandez back. Thirty minutes later Human Resources called and told Ms. Hernandez that she was being fired because she violated Defendant's attendance policy.

26. Ms. Hernandez was prepared to return to work on March 9, 2020–less than three weeks after she initially took leave.

### COUNT I
### (Family Medical Leave Act – Interference)

27. Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

28. Plaintiff is an "eligible employee" as defined by 29 U.S.C. § 2611(2)(A).

29. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A)(i).

30. Plaintiff was entitled to leave as defined by 29 U.S.C. § 2612(a)(1)(C) because her mother was terminally ill and required care before she ultimately passed way.

31. On or about February 19, 2020, Plaintiff gave Defendant adequate notice of her intention to take leave when she informed Mr. Crawford that her mother was terminally ill and that she had to fly to El Salvador the next day to take care of her.

32. Although Defendant had knowledge that Plaintiff needed to use leave under the Act, Defendant did not notify Plaintiff of her eligibility to take FMLA leave or inform her of her rights or initiate the process required for leave, in violation of 29 C.F.R. § 825.300(b)(c)(d).

33. Defendant interfered with, restrained, and denied Plaintiff the exercise of or the attempt to exercise her rights provided under the FMLA in violation of 29 U.S.C. § 2615(a).

34. Defendant violated the FMLA by unlawfully denying Plaintiff benefits under the Act and terminating her on or about March 5, 2020.

35. As a result, Plaintiff suffered loss of wages (back and front pay), employment benefits, and other compensation (hereinafter, collectively, "lost pay") in an amount to be determined at trial.

36. Defendant's actions were willful, not in good faith, and Defendant did not have reasonable grounds for believing its actions did not violate the FMLA. As such, Plaintiff is entitled to an additional amount as liquidated damages equal to the sum of the lost pay.

37. Defendant's interference with Plaintiff's FMLA rights also entitles Plaintiff to an award of reasonable attorney's fees and costs.

## COUNT II
### (Family Medical Leave Act – Retaliation)

38. Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

39. Plaintiff engaged in protected activity under the FMLA when on or about February 19, 2020, Plaintiff gave Defendant notice of her intention to take leave because her mother was terminally ill, which required her to fly to El Salvador the next day to take care of her. Plaintiff also engaged in protected activity when she took leave beginning on February 19, 2020.

40. Defendant terminated Plaintiff's employment in retaliation for engaging in protected activity and taking FMLA protected leave.

41. There was a causal link between the protected activity and the adverse employment action because Defendant referenced Plaintiff's decision to take leave when it terminated her less than three weeks after Plaintiff took leave that she was entitled to under the FMLA.

42. As a result, Plaintiff suffered loss of wages (back pay and front pay), employment benefits, and other compensation (hereinafter, collectively, "lost pay"), in an amount to be determined at trial.

43. Defendant's actions were willful, not in good faith, and Defendant did not have reasonable grounds for believing its actions did not violate the FMLA. As such, Plaintiff is entitled to an additional amount as liquidated damages equal to the sum of the lost pay.

44. Defendant's retaliation against Plaintiff also entitles Plaintiff to an award of reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on all Counts and award Plaintiff the following:

a. Lost pay;

b.  Liquidated damages;

c.  Reasonable attorney's fees and litigation costs;

d.  Tax on any award;

e.  Any other relief as the Court deems fair and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

Dated: March 12, 2021

Respectfully submitted,

/s/Daniel Trujillo Esmeral_____
Daniel Trujillo Esmeral [21615]
Susan L. Kruger [15313]
Alan Lescht & Associates, P.C.
1825 K Street NW, Suite 750
Washington DC, 20006
T: (202) 463-4036
F: (202) 463-6067
Daniel.trujilloesmeral@leschtlaw.com
Susan.kruger@leschtlaw.com
*Attorneys for Plaintiff*